# CA No. 23-1842

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

SHAIQUAN MORAN-STENSON, a/k/a Shaiquan Moran-Stetson, a/k/a
Fabio, a/k/a Q,

Defendant-Appellant.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

## BRIEF OF APPELLEE UNITED STATES OF AMERICA

Darcie N. McElwee
United States Attorney

Brian S. Kleinbord
Assistant U.S. Attorney
100 Middle Street
East Tower, Sixth Floor
Portland, ME 04101
(207) 780-3257

# TABLE OF CONTENTS

Table of Authorities ................................................................. ii

Statement of Issues Presented ..............................................

Statement of Facts ................................................................ 1
    A.    Offense Conduct ................................................. 1
    B.    Sentencing ........................................................ 3
        1.    The PSR and Moran-Stenson's objection to his base offense level ................................................... 3
        2.    Sentencing on the Revocation of Supervised Release ... 7
        3.    Sentencing on the Felon-in-Possession Conviction ....... 9

Summary of Arguments ........................................................ 13

Argument ............................................................................. 14
THE DISTRICT COURT PROPERLY APPLIED THE MODIFIED CATEGORICAL APPROACH IN FINDING THAT MORAN-STENSON'S STATE-COURT CONVICTION WAS A "CONTROLLED SUBSTANCE OFFENSE" WITHIN THE MEANING OF U.S.S.G. § 4B1.2(B) .................................... 14
    A.    Standard of Review and Governing Legal Principles .......... 17
    B.    *United States v. Mohamed*–The actus reus component of the Maine drug trafficking statute is divisible ........................... 21
    C.    *Swaby v. Yates*–The substance component is divisible because state law makes it an element of the offense .......... 23
    D.    Application of the modified categorical approach confirms that Moran-Stenson's Maine conviction qualifies as a controlled substance offense ................................................. 27
    E.    The cases relied on by Moran-Stenson are inapposite or support the government's position ....................................... 32

Conclusion ........................................................................... 38

# TABLE OF AUTHORITIES

## Federal Cases

*Carcamo v Lynch*, 648 Fed. Appx. 306 (4th Cir 2016).....................26, 27

*Coronado, v. Holder*, 759 F.3d 977 (9th Cir. 2014)...........................27, 36

*Cucalon v. Barr*, 958 F.3d 245 (4th Cir. 2020) .......................................33

*Descamps v. United States*, 570 U.S. 254 (2013) ........................18, 19, 23

*Donawa v. U.S. Attorney General*, 735 F.3d 1275 (11th Cir. 2013) .......23

*Harbin v. Sessions*, 860 F.3d 58 (2d Cir. 2017) .............. 33, 34, 35, 36, 37

*Mathis v. United States*, 579 U.S. 500 (2016)................................. *passim*

*Rincon v. Garland*, 70 F.4th 1080 (8th Cir. 2023)..................................33

*Shepard v. United States*, 544 U.S. 13 (2005) .......................................15

*Swaby v. Yates*, 847 F.3d 62 (1st Cir. 2017) .................................. *passim*

*Taylor v. United States*, 495 U.S. 575 (1990).........................................18

*Thompson v. United States*, 64 F.4th 412 (1st Cir. 2023) ......................18

*United States v. Abdulaziz*, 998 F.3d 519 (1st Cir. 2021)................17, 26

*United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011)...23

*United States v. Carrigan*, 724 F.3d 39 (1st Cir. 2013)..........................17

*United States v. Colón-De Jesús*, 85 F.4th 15 (1st Cir. 2023) ...............15

*United States v. Henderson*, 841 F.3d 623 (3d Cir. 2016) ......................26

*United States v. Lewis*, 963 F.3d 16 (1st Cir. 2020) ..............................17

*United States v. Martinez-Lopez*, 864 F.3d 1034 (9th Cir. 2017) .....32, 33

*United States v. Mohamed*, 920 F.3d 94 (1st Cir. 2019)... 5, 14, 21, 22, 23

*United States v. Ramos-Gonzalez*, 775 F.3d 483 (1st Cir. 2015)............19

*United States v. Rivera-Carrasquillo*, 933 F.3d 33 (1st Cir. 2019) ........15

*United States v. Spinks*, 63 F.4th 95 (1st Cir. 2023) ...............................1

*United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018) ..................33, 34

*United States v. Williams*, 80 F.4th 85 (1st Cir. 2023).....................19, 20

## State Cases

*State v. Barnard*, 772 A.2d 852 (Me. 2001)............................................28

*State v. Feng*, 421 A.2d 1258 (R.I. 1980)................................................24

*State v. Lowden*, 87 A.3d 694 (Me. 2014)...............................................28

*State v. McLaughlin*, 189 A.3d 262 (Me. 2018)................................29, 36

*State v. Mendez*, 116 A.3d 228 (R.I. 2015) ............................................25

## Federal Statutes

18 U.S.C. § 3553(a) ................................................................................11

## State Statutes

Me. Rev. Stat. Ann. tit. 17-A, § 1102 .....................................................29

Me. Rev. Stat. Ann. tit. 17-A, § 1102(1)(F) .............................................21

Me. Rev. Stat. Ann. tit. 17-A, § 1103 .....................................................28

Me. Rev. Stat. Ann. tit. 17-A, § 1103(1-A)(A) .........................4, 22, 29, 36

Me. Rev. Stat. Ann. tit. 17-A, § 1103(1-A)(H).................................29, 37

R.I. Gen. Laws Section § 21-28-4.01 ......................................................24

## Federal Rules

U.S.S.G. § 2K2.1 ....................................................................... 3, 6, 17, 31

U.S.S.G. § 2K2.1(a) ................................................................................21

U.S.S.G. § 2K2.1(a)(4) ..........................................................................5, 7

U.S.S.G. § 2K2.1(a)(4)(A) .......................................................................17

U.S.S.G. § 2K2.1(a)(6)(B) .........................................................................4

U.S.S.G. § 4A1.1(d) ..................................................................................4

U.S.S.G. § 4B1.2 .....................................................................................17

U.S.S.G. § 4B1.2(b) ............................................................... 14, 17, 18, 37

## Other Works

Black's Law Dictionary 634 (10th ed. 2014) ...........................................19

Maine Jury Instruction Manual § 6-43 (2024 ed.).................................31

## STATEMENT OF ISSUE PRESENTED

WHETHER THE DISTRICT COURT PROPERLY APPLIED THE MODIFIED CATEGORICAL APPROACH IN FINDING THAT MORAN-STENSON'S STATE-COURT CONVICTION WAS A "CONTROLLED SUBSTANCE OFFENSE" WITHIN THE MEANING OF U.S.S.G. § 4B1.2(B).

# STATEMENT OF FACTS

Moran-Stenson was indicted in the District of Maine on one count of being a felon in possession of ammunition. D 39 at 3.[1] In addition, because Moran-Stenson was on supervised release at the time of this offense, the U.S. Probation office filed a petition to revoke Moran-Stenson's supervised release. *Id.* Moran-Stenson pleaded guilty to the indictment and admitted the violation of supervised release. The district court imposed a sentence of 18 months on the revocation of supervised release, and a consecutive sentence of 77 months on the felon-in-possession conviction. RA 18, 28. This appeal followed.

## A.  Offense Conduct

On December 29, 2021, at approximately 9:02 p.m., Defendant-Appellant Shaiquan Moran-Stenson fired approximately 12 shots in the vicinity of 87 Bartlett Street in Lewiston, Maine. D 30 at 1.[2] Video

---

[1] Citations are as follows: matters on the district court's docket as "D[#];" Record Appendix as "RA [pg#];" Defendant-Appellant's Addendum as "Add. [pg#]," and Defendant-Appellant's opening brief as "D.Br. [pg#]."

[2] Because this appeal follows Moran-Stenson's guilty plea, the relevant facts are taken from the plea agreement, prosecution version, undisputed sections of the presentence report, and the transcripts of key court hearings. *United States v. Spinks*, 63 F.4th 95, 97 (1st Cir. 2023).

cameras at both 87 and 88 Bartlett Street recorded Moran-Stenson arriving on the scene as a passenger in a red Dodge Durango at approximately 8:45 p.m. *Id*. Video further captured him firing multiple shots across the street before running into the parked Dodge Durango. *Id*. Moran-Stenson then fired additional shots from the passenger seat as the vehicle drove away. *Id*. Moran-Stenson's face was clearly visible on the video from two cameras at 87 Bartlett Street, and law enforcement witnesses identified the shooter as Moran-Stenson. *Id*.

Approximately one week later, Moran-Stenson was arrested pursuant to an arrest warrant. *Id*. During a custodial interview following his arrest, Moran-Stenson disclaimed involvement in the shooting but acknowledged being present in the vicinity of 87 Bartlett Street that evening. *Id*. Another witness confirmed that Moran-Stenson was visiting 87 Bartlett Street around the time the shooting occurred. *Id*. at 1-2.

Investigators recovered 12 Remington-Peters .40 caliber shell casings from the vicinity in which Moran-Stenson was seen firing the weapon; the casings were found on side of the street and adjacent to the path the car travelled. *Id*. at 2. The recovered ammunition was

manufactured outside the State of Maine and thus traveled in or affected interstate commerce prior to being possessed by Moran-Stenson in Maine. *Id.*

At the time of Moran-Stenson's arrest, he had previously been convicted in the Western District of New York of being a felon in possession of a firearm and ammunition. *Id.* Moran-Stenson served a sentence of twenty-seven months for that offense and was still on supervised release at the time of the Bartlett Street shooting. *Id.* As a result of this conviction, Moran-Stenson knew he was prohibited from possessing a firearm or ammunition at the time of the instant offense. *Id.*

## B.    Sentencing

### 1.    *The PSR and Moran-Stenson's objection to his base offense level.*

In addition to his prior federal firearms conviction, Moran-Stenson was also previously convicted of unlawfully trafficking cocaine base in violation of Maine law. The revised presentence investigation report ("PSR") therefore assigned Moran-Stenson a base offense level of 20 pursuant to U.S.S.G. § 2K2.1 (prohibited person with a prior controlled substance conviction). D 39 at 5.

Moran-Stenson's drug trafficking conviction arose out of the execution of a search warrant of a residence, during which Moran-Stenson was apprehended as he was attempting to go into one of the bedrooms. *Id*. at 9. He was detained and searched, at which time law enforcement officers recovered a clear plastic baggie in his pants pocket containing 2.5 grams of cocaine base. *Id*. at 9. Moran-Stenson was convicted of knowingly trafficking in a schedule W drug, a violation of 17-A § M.R.S.A 1103(1-A)(A). *Id*. The PSR determined that this was a controlled substance offense which therefore warranted a four-level increase to Moran-Stenson's base offense level. *Id*.

The PSR recommended an additional four-level enhancement because Moran-Stenson possessed the ammunition in connection with a felony offense, increasing his offense level to 24. *Id*. at 5 (citing U.S.S.G. § 2K2.1(a)(6)(B)). With a three-level reduction for acceptance of responsibility, Moran-Stenson's total offense level was 21. *Id*. at 6.

The PSR calculated Moran-Stenson's criminal history score as 12. *Id*. at 13. However, because he committed the instant offense while under a criminal justice sentence, two points were added pursuant to U.S.S.G. § 4A1.1(d), increasing the total criminal history score to 14 and

placing Moran-Stenson in criminal history category VI. *Id.* The resulting guideline imprisonment range was 77-96 months. *Id.* at 20. The guideline range for the revocation sentence was 12-18 months, based on a CHC-IV for a Grade B violation, with a 2-year statutory maximum term. RA 4, 6.

Moran-Stenson's only objection at sentencing was to the application of a base level 20 under U.S.S.G. § 2K2.1(a)(4). RA 10-11. His contention was that his Maine conviction did not qualify as a "controlled substance offense," as defined by the sentencing guidelines. *Id.* The Maine trafficking statute includes two elements: the trafficking element and the substance element. RA 12. Moran-Stenson conceded that, as to the first element of the offense, trafficking, First Circuit precedent made it clear that his prior Maine conviction qualified as a controlled substance offense because he intentionally "trafficked" cocaine. RA 12; RA 34-35, (citing *United States v. Mohamed*, 920 F.3d 94 (1st Cir. 2019)).

Moran-Stenson maintained, however, that *Mohamed* "did not opine on the divisibility of the statute as to the controlled substance element," and "[t]he mere fact that a statute is divisible for one purpose

does not mean that the statute is divisible for all purposes or arguments." RA 35. As to the substance element, Moran-Stenson asserted that "[n]o matter how [he] committed the offense, it always includes Schedule W," and therefore "Schedule W is an element, it's not a means." RA 12-13. According to Moran-Stenson, the court was required to apply the categorical approach and find that his Maine conviction did not qualify as a controlled substance offense for purposes of U.S.S.G. § 2K2.1. RA 34-35. This was so, Moran-Stenson argued, because the Maine drug schedule under which his conviction arose, Schedule W, included various substances that were not identified in the federal Controlled Substances Act. RA 36. Therefore, the Maine statute was not a categorical match and his predicate conviction could not be used to increase his base offense level. *Id.*

The government argued that the court should follow the reasoning of *Mohamed* and apply the modified categorical approach. D 45 at 3. Pursuant to the modified categorical approach, the court could consult the records of Moran-Stenson's state-court conviction which made clear that the specific controlled substance at issue was cocaine base, a drug listed under both the federal Controlled Substances Act (CSA) and

Schedule W of the Maine state regime. *Id.* at 7-8. Accordingly, the government argued that Moran-Stenson's predicate conviction constituted a "controlled substance offense," and U.S.S.G. § 2K2.1(a)(4) properly applied. *Id.* at 9; RA 42-48.

The court agreed with the government and overruled Moran-Stenson's objection. RA 18. Based on the court's review of the case law and the parties' briefs, it opined that Moran-Stenson's conviction constituted a controlled substance offense because it was "covered by *Mohamed* and its progeny." *Id.* The court denied Moran-Stenson's objection and proceeded to sentencing. *Id.*

2.    *Sentencing on the Revocation of Supervised Release.*

The court first addressed the violation of supervised release. RA 2-8. The sentencing range for the violation was 12-18 months. RA 6. The government recommended a sentence at the high end of the guidelines and argued for the sentence to be imposed consecutively to the sentence on the substantive offense. RA at 3-4. The government noted that Moran-Stenson's violation "primarily concerned conduct in which the defendant was once again acting as a felon in possession" of

ammunition, which closely followed his 2021 conviction for being a felon in possession of a firearm. RA 3.

The defense argued that although Moran-Stenson was "by no means the model . . . supervisee," he "did make some strides in a positive direction." RA 6. The defense requested a sentence below the top of the guidelines and "ask[ed] the Court to run the supervised release concurrent to the underlying offense because we expect that he will get a significant sentence in the underlying offense that will be enough to satisfy all of the goals under the law." *Id.*

The court agreed with the government's recommendation, finding Moran-Stenson's record on supervised release to be unworthy of any leniency. "[T]hroughout his term of supervised release," the court noted, Moran-Stenson "remained unemployed, lacked stable housing, produced positive urine samples, failed to fully participate in treatment, and incurred law enforcement contact." RA 7. The court also emphasized Moran-Stenson's "admissions of his using drugs, failure to provide employment documentation, failing to attend group sessions, fail[ure] to report for urine testing, positive sample for marijuana and cocaine, and then a major violation of criminal activity." *Id.* at 7-8. While accounting

for Moran-Stenson's "tragic history as a child," the court noted that "the problems he had with his behavior on supervised release" were "among the worst" the court had seen. RA 8. Consequently, after consideration of "all of the factors set forth in 3553(a)," the court concluded that "a high guideline sentence [was] appropriate." *Id.* The court imposed a sentence of 18 months on the revocation of supervised release. *Id.*

### 3. Sentencing on the Felon-in-Possession Conviction.

The government argued that that the nature and circumstances of Moran-Stenson's offense "warrant[ed] significant punishment." D 45 at 9. Moran-Stenson "wildly" fired approximately twelve rounds in the vicinity of 87 Bartlett Street in Lewiston, Maine. *Id.* Investigators determined that the shots struck multiple nearby apartment buildings. *Id.* Following the first round of shots, Moran-Stenson got in his vehicle and "slowed down to fire additional shots" prior to fleeing. *Id.* at 10.

Although no one was injured as result of Moran-Stenson's shooting spree, his conduct presented "a substantial danger to those living in the neighborhood" and "underscore[d] the need to protect the public with a significant sentence." *Id.* at 9-10. The government also noted Moran-Stenson's "prodigious criminal history," as evidenced by

the fact that he was a "level of Category V by his mid-20s," which was "upgraded to Category VI because the offense occurred while under a criminal justice sentence." *Id*. at 10.

The defense countered by arguing that Moran-Stenson had an "extremely fraught and difficult upbringing." RA 22. In addition, defense counsel argued (though provided no supporting evidence) that Moran-Stenson's "perception was that there were shots coming at him," and he therefore "felt threatened" and "had to protect himself." RA 22-23. Nevertheless, Moran-Stenson acknowledged that "he made a very bad decision when he felt threatened in this circumstance." RA 23. Defense counsel asked the court "to consider a downward variance given that circumstance which I think would bring his guideline range down to 70 to 87 months," to impose a sentence "perhaps in the middle of that, maybe 75 months," and to "use its discretion to run the supervised release revocation concurrently." RA 23-24.

Prior to imposing sentence, the court noted that it had "reviewed the sentencing memos in this case," and "also reviewed carefully the contents of the revised presentence investigation report which I take into account." RA 25. The court considered "all of the factors set forth in

18 U.S.C. Section 3553(a). Most important the nature and circumstances of the offense; the life history, the difficulties the defendant's had throughout his life and record of this defendant; seriousness of the offense; and the need for just punishment; as well as deterrence." RA 26-27. The court found Moran-Stenson's criminal record "abysmal," particularly "for someone as young as he is." RA 27. The court emphasized that Moran-Stenson's history of recidivism was particularly troubling as it related to handgun offenses, noting that he had accumulated three handgun-related convictions just within the previous five years. RA 27.

Based on his record, Moran-Stenson had not "seem[ed] to have learned much from prior encounters with the criminal justice system," and his conduct "indicates that there is some issue here about being able to abide by restrictions imposed by society." *Id.* Coupled with Moran-Stenson's involvement with drugs, and "the danger is . . . apparent." *Id.* Nevertheless, the court found that "a sentence at the lower end of the guideline range" was appropriate because of the underlying sentence on the supervised release violation. *Id.* Accordingly, the court imposed a term of 77 months' imprisonment

consecutive to the sentence imposed on the supervised release violation,

followed by an additional term of three years' supervised release. RA 28.

## SUMMARY OF THE ARGUMENTS

Moran-Stenson raises a single issue on appeal, challenging the district court's determination that his prior Maine drug trafficking conviction warranted a four-level increase to his base offense level. As set forth below, the district court properly applied the modified categorical approach in concluding that Moran-Stenson's Maine conviction was a "controlled substance offense" under the guidelines.

The substance component of the Maine drug statute is divisible because it establishes separate, alternative crimes, rather than alternative means of committing the same crime. Accordingly, the modified categorical approach applies, and this Court should affirm the district court's judgment.

# ARGUMENT

**THE DISTRICT COURT PROPERLY APPLIED THE MODIFIED CATEGORICAL APPROACH IN FINDING THAT MORAN-STENSON'S STATE-COURT CONVICTION WAS A "CONTROLLED SUBSTANCE OFFENSE" WITHIN THE MEANING OF U.S.S.G. § 4B1.2(B).**

The only issue on appeal is whether the district court properly applied the modified categorical approach in determining that Moran-Stenson's predicate drug trafficking conviction was a "controlled substance offense," thus triggering an enhancement to his base offense level. The issue has been narrowed further by Moran-Stenson's framing of the arguments on appeal.

Significantly, he concedes, as he must, that this Court has already concluded that the trafficking element of the Maine statute is divisible and thus subject to the modified categorical approach. *See* D.Br. at 6 ("This Court has held that the actus reus component is 'divisible,' meaning there are alternative ways to 'traffick' a drug."); *Id*. at 11, citing *United States v. Mohamed*, 920 F.3d 94 (1st Cir. 2019) ("Here, the Defendant conceded that the Maine statute was divisible with respect to the trafficking element, as the *Mohamed* Court ruled, but argued that the controlled substance element, i.e., that the drug trafficked was

listed in Schedule W, was not divisible."). Thus, Moran-Stenson's divisibility argument is limited to the substance element of the Maine statute.

Second, Moran-Stenson has not disputed at the district court level or on appeal that, assuming the modified categorical approach applies, the records of his state-court conviction, i.e., *Shepard*[3] documents, establish that his cocaine-trafficking conviction is, in fact, a controlled substance offense for purposes of federal law. Accordingly, Moran-Stenson has waived any argument under the final step of the analysis under the modified categorical approach, and that issue is not before this Court. *United States v. Rivera-Carrasquillo*, 933 F.3d 33, 53 (1st Cir. 2019) (issues not raised in the district court are not preserved for appeal); *United States v. Colón-De Jesús*, 85 F.4th 15, 25 (1st Cir. 2023)

---

[3]   *Shepard v. United States*, 544 U.S. 13, 26 (2005) (holding that, in determining whether a defendant pled guilty to a qualifying offense, a sentencing court may look to the charging document, the plea agreement, the plea colloquy transcript, or to some "comparable judicial record"). In *Shepard*, the Court addressed a Massachusetts burglary statute covering entries into "boats and cars" as well as buildings. 544 U.S. at 17. There, the Court considered an alternative set of documents in cases that resolved by plea and did not go before a jury, and authorized sentencing courts to scrutinize a restricted set of materials. *Id.* at 20.

(failure to present argument in opening brief operates as waiver of issue on appeal). The issue on appeal is thus confined to whether the substance component of the Maine statute is divisible such that the modified categorical approach applies.

As explained below, this Court established a framework for answering this question in *Swaby v. Yates*, 847 F.3d 62 (1st Cir. 2017), where the Court employed the modified categorical approach to find that a Rhode Island conviction for possession with intent to distribute marijuana qualified as a "controlled substance" conviction for purposes of federal immigration law. The Court looked to the Rhode Island Supreme Court's construction of the statute which held that the substance listed in the state drug schedules was "as an element of an offense . . . rather than merely as a possible means by which the offense may be committed." *Id*. at 67-68. Therefore, the statute was divisible by drug type and the modified categorical approach was appropriate. *Id*. at 69.

Applying that framework here, it is clear that the substance component of the Maine statute, like the Rhode Island statute, is an element of the offense and the statute is therefore divisible. The

modified categorical approach applies, and Moran-Stenson's Maine

conviction qualifies as a controlled substance offense under U.S.S.G.

§ 4B1.2(b). This Court should affirm the district court's sentence.

### A. Standard of Review and Governing Legal Principles.

This Court reviews de novo a district court's determination that a

defendant's prior conviction constitutes a controlled substance offense

for purposes of a sentencing enhancement. *United States v. Abdulaziz*,

998 F.3d 519, 523 (1st Cir. 2021). When the conviction is under state

law, state court construction of relevant state law dictates this Court's

result. *United States v. Carrigan*, 724 F.3d 39, 48 (1st Cir. 2013).

Under § 2K2.1(a)(4)(A) of the Sentencing Guidelines, a base

offense level of 20 applies to a defendant who convicted of a federal

firearms offense if "the defendant committed any part of the instant

offense subsequent to sustaining one felony conviction of . . . a

controlled substance offense." A "controlled substance offense" under

§ 2K2.1(a)(4)(A) has the meaning given that term in § 4B1.2(b) and

Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1

cmt. n.1; *United States v. Lewis*, 963 F.3d 16, 20-21 (1st Cir. 2020).

Section 4B1.2(b) defines "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

Courts generally use a "categorical approach" when comparing the elements of a state offense to the generic version of the offense to determine whether it qualifies as a conviction for purposes of a guidelines analysis under § 4B1.2. *See, e.g.*, *Taylor v. United States*, 495 U.S. 575, 600 (1990); *Descamps v. United States*, 570 U.S. 254, 257 (2013); *Thompson v. United States*, 64 F.4th 412, 419 (1st Cir. 2023). The categorical approach compares the statutory elements of a prior conviction with the elements of the "generic" crime. *Descamps*, 570 U.S. at 257. If the statute's elements are the same as, or narrower than, those of the generic offense, the prior conviction qualifies. *Id*. This is because anyone convicted under that law is "necessarily . . . guilty of all the elements of [the generic crime]." *Taylor*, 495 U.S. at 599.

By contrast, if the statute in question is broader, a conviction under that statute cannot satisfy the criteria of a generic offense, even

if the defendant actually committed the offense in its generic form. *Descamps*, 570 U.S. at 261. The key to this distinction is based in the elements of the statute, not the facts of the offense. *Id.*; *see also United States v. Ramos-Gonzalez*, 775 F.3d 483, 504 (1st Cir. 2015) (noting that the approach is categorical in that the court asks whether the offense of conviction—no matter the defendant's specific conduct—necessarily falls within the Guidelines' description of a "controlled substance offense").

This approach is altered, however, for "divisible" statutes— statutes that list elements in the alternative, thereby defining multiple crimes—to determine "which of the alternative elements listed . . . was integral to the defendant's conviction." *United States v. Williams*, 80 F.4th 85, 96 (1st Cir. 2023) (quoting *Mathis v. United States*, 579 U.S. 500, 505 (2016)). "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Mathis*, 579 U.S. at 504 (citing Black's Law Dictionary 634 (10th ed. 2014)). The Supreme Court's decision in *Mathis* provided an example to illustrate the difference between a statute that lists alternative means of committing a single crime (an indivisible one) and

a statute that creates separate crimes with alternative elements (a divisible one):

> [S]uppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime . . . a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a "deadly weapon."

579 U.S. at 506 (internal citations and quotation marks omitted). In sum, a statute such as the deadly weapon crime noted in *Mathis* (which lists various factual means of committing a single element) is not divisible, but a statute that list elements in the alternative, thereby defining multiple crimes, is divisible. *Id*. at 505.

When a statute is divisible, the sentencing court may apply what is known as the "modified categorical approach" and consult a limited class of documents—otherwise known as *Shepard* documents (*see* n.2, supra)—"to determine what crime, with what elements, a defendant was convicted of." *Williams*, 80 F.4th at 96 (quoting *Mathis*, 579 U.S. at 505-06). These documents may include, among other things, the

indictment, jury instructions, or plea agreement and colloquy. *Williams*, 80 F.4th at 96.

## B. *United States v. Mohamed*—The actus reus component of the Maine drug trafficking statute is divisible.

Though this part of the argument is conceded by Moran-Stenson, the government briefly sets forth this Court's decision in *United States v. Mohamed*, 920 F.3d 94 (1st Cir. 2019), as it provides necessary context for the remainder of the analysis. In *Mohamed*, the defendant pleaded guilty to one count of being a felon in possession of a firearm. *Id.* at 96. At sentencing, the district court held that, as a matter of law, Mohamed's prior Maine drug trafficking conviction did not qualify as a "controlled substance offense" under U.S.S.G. § 2K2.1(a), and the government appealed. *Id.* at 96-97.

Mohamed's predicate conviction was for distribution of cocaine base pursuant to the same Maine statute at issue here: 17-A, § 1103. *Id.* at 99. That statute provides as follows:

> [A] person is guilty of unlawful trafficking in a scheduled drug if the person intentionally or knowingly traffics in what the person knows or believes to be a scheduled drug, which is in fact a scheduled drug, and the drug is:

A. A schedule W drug.[4]

Me. Rev. Stat. Ann. tit. 17-A, § 1103(1-A)(A); *Mohamed*, 920 F.3d at 99.

The Court found that "Maine law define[d] 'traffick' in multiple alternative ways," including "A: To make, create, manufacture; B. To grow or cultivate, except for marijuana; C. To sell, barter, trade, exchange or otherwise furnish for consideration; [and] D. To possess with the intent to do any act mentioned in paragraph C." 920 F.3d at 99-100. Citing the alternative means for trafficking listed in the Maine statute, this Court determined that the statute was divisible and employed the modified categorical approach. *Id*. at 101.

The Court then looked to the plea colloquy "to determine whether the portion of the statute involved distributive intent." *Id*. at 103. Because the "State prosecutors made clear the plea was to intentional trafficking," and the other "*Shepard* documents establish[ed] that Mohamed's Maine conviction rested on intentional distribution, to which he pled," the Court concluded that "Mohamed's Maine conviction [was] properly a 'controlled substance offense' under the Guidelines." *Id*.

---

[4]     Under Maine law, cocaine base is a schedule W drug. *Mohamed*, 920 F.3d at 99 (citing § 17-A 1102 (1)(F)).

at 103-104. Consequently, the court vacated the judgment of the district court and held that Mohamed was "eligible for an increased guideline imprisonment range based on a prior 'controlled substance offense.'" *Id.* at 106.

### C. *Swaby v. Yates*—The substance component is divisible because state law makes it an element of the offense.

Though the issue was not before the Court in *Mohamed*, in *Swaby v. Yates*, 847 F.3d 62 (1st Cir. 2017), this Court had the opportunity to address whether the substance element of a drug statute is divisible. There, the Court applied the modified categorical approach and held that the defendant's Rhode Island conviction for possession with intent to distribute marijuana qualified as a "controlled substance" conviction and was therefore a "removable offense" under the Immigration and Nationality Act. 847 F.3d at 67-69.[5]

---

[5] Although *Swaby v. Yates* addressed the modified categorical approach in the context of an immigration appeal rather than the sentencing context, the general analytical framework and principles are the same. *See, e.g.*, *Donawa v. U.S. Attorney General*, 735 F.3d 1275, 1280 n.3 (11th Cir. 2013) (noting that the court has "routinely imported holdings" applying the modified categorical approach "from one context to the other"); *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 922 (9th Cir. 2011) (*en banc*), *abrogated on other grounds by Descamps*, 570 U.S. 254 (noting that the court has applied the same analytical framework in criminal cases "to determine whether other crimes qualify

Guided by the framework established by the Supreme Court in *Mathis*, the Court began by examining "how the Rhode Island Supreme Court has construed the offense." *Id*. at 67 (noting that the "threshold inquiry"—elements or means—is "easy" where "a state court decision definitively answers the question") (quoting *Mathis*, 579 U.S. at 517 (internal quotation marks omitted). The Court found such a case in *State v. Feng*, 421 A.2d 1258 (R.I. 1980), where the Rhode Island Supreme Court "expressly described the particular type of controlled substance listed in the state drug schedules as an element of an offense under Rhode Island General Laws Section 21-28-4.01, rather than merely as a possible means by which the offense may be committed." *Id*. at 67-68. *Feng* did so in the course of deciding whether there was a sufficient factual basis to support a guilty plea to the charge of possession of "a controlled substance to wit . . . LSD." *Id*. at 68. The Rhode Island court explained that "an adequate factual basis for a plea" can be established by reading the indictment to the defendant, "but only

---

as a 'violent felony' under the ACCA" and also "in the immigration context to determine whether an alien is removable as a result of having been convicted of an 'aggravated felony'").

if, among other things, 'the elements of the crime are clearly set out.'"

*Id*. (quoting *Feng*, 421 A.2d at 1270).

*Feng* was also consistent with other Rhode Island Supreme Court decisions holding that the specific drug type was an element of the office. *See Swaby*, 847 F.3d at 68 (citing *State v. Mendez*, 116 A.3d 228, 239 (R.I. 2015) (jury instructions for the crime of possession of a controlled substance specified that "the State must show that the defendant possessed the controlled substance in question"). Thus, the Rhode Island statute did not set out one overarching offense covering all "controlled substances" on the state schedules, but rather "create[d] distinct state law crimes for each distinct drug listed on the state drug schedules." *Id*. at 67. "Swaby's actual crime of conviction" therefore "f[ell] within the federally defined removable offense under § 1227(a)(2)(B)(i) because the relevant plea documents make clear that Swaby's convictions were for manufacturing, delivering, or possessing with intent to distribute marijuana, a drug that is listed on the federal drug schedules." *Id*.

Moreover, the *Swaby* Court's conclusion that the Rhode Island crime was divisible was bolstered by the fact that the statute was not

drafted merely "to offer illustrative examples," but instead assigned "different punishments," based on the class of a drug." *Id.* at 68 (quotation marks and citations omitted). The Court noted that "[t]his feature of the Rhode Island statute, under *Mathis*, also points in favor of the conclusion that the offense sets out distinct crimes based on drug type." *Id.* [6]

Finally, the Court observed that its "determination that the statute is divisible by drug type . . . comports with the rulings of several of our sister circuits, which have relied on similar considerations in applying the modified categorical approach to other state controlled substance statutes." *Id.* at 69 (citing *United States v. Henderson*, 841 F.3d 623, 629 (3d Cir. 2016) (looking to state law where Pennsylvania

---

[6]     This Court's decision in *United States v. Abdulaziz*, 998 F.3d 519 (1st Cir. 2021), is not to the contrary. In *Abdulaziz*, the Court employed the categorical approach in holding that the defendant's predicate Massachusetts conviction was not a "controlled substance offense" under the Guidelines. 998 F.3d at 531. The court reasoned that the defendant's marijuana distribution offense under Massachusetts law did not qualify because the Massachusetts law proscribed hemp and federal law excluded hemp at the time of Abdulaziz's sentencing. *Id.* Importantly, both parties agreed that the categorical approach applied and thus the Court has no occasion to consider whether the Massachusetts statute was divisible. *See id.* at 522. Therefore, because *Abdulaziz* is not a modified categorical approach case, it does not bear on the analysis here.

Superior Court had ruled that "the particular type of drug is an element of the offense"); *Carcamo v. Lynch*, 648 Fed. Appx. 306, 312 (4th Cir 2016) (holding that "[t]he interpretations of the highest court of the District of Columbia further suggest that the identity of the controlled substance is an element of the D.C. statute").

### D. Application of the modified categorical approach confirms that Moran-Stenson's Maine conviction qualifies as a controlled substance offense.

As in *Swaby*, Maine law clearly establishes that the schedule element is divisible and therefore triggers the application of the modified categorical approach. In several decisions, the Supreme Judicial Court of Maine has held that the particular drug substance is an element of the offense that must be proved by the State beyond a reasonable doubt and that different substances are assigned different punishments based on the class of the drug. The Maine statute "effectively creates several different crimes," and not "separate means of commission." *See Coronado, v. Holder*, 759 F.3d 977, 985 (9th Cir. 2014) (holding that California drug statute which, like the Maine statute, "identifies a number of California drug schedules and statutes and

organizes them into five separate groups," lists "potential elements in the alternative").

For instance, in *State v. Lowden*, 87 A.3d 694, 698 (Me. 2014), the Maine court examined the same statute at issue in this case, Me. Rev. Stat. Ann. tit. 17-A, § 1103. The court held that unlawful trafficking in scheduled drugs "mandates not only that a person 'trafficks' in a drug, but that the drug "*is in fact a scheduled drug*." *Lowden*, 87 A.3d at 698 (quoting Me. Stat. tit. 17-A, § 1103) (emphasis added).

Likewise, in *State v. Barnard*, 772 A.2d 852 (Me. 2001), the court held that, to convict Barnard of trafficking, the State was required to prove that the tablets sold by Barnard to an undercover officer "were in fact a scheduled drug, an essential element of the crime charged and the only element in this case that is in dispute." *Id*. at 856-57. The State had the burden, the court made clear, to prove every element of the offense beyond a reasonable doubt, including that the tablets were in fact the substance alleged in the charging document, Dilaudid. *Id*. at 857. The court ultimately found that the evidence was sufficient—based on the nature of the sale and the appearance of the tablets—"to support

the conclusion of the jury beyond a reasonable doubt that the tablets were Dilaudid," a schedule W drug. *Id.* at 858.

Moreover, as in *Swaby*, a second feature of the Maine statute that establishes divisibility is that different controlled substances are assigned different punishments. In *State v. McLaughlin*, 189 A.3d 262, 268 (Me. 2018), the court held that, "[i]n dividing various drugs into schedules, and then setting out its definitions of the drugs, including cocaine, within those schedules, the Legislature explained that the definitions were to be used '[f]or the purposes of defining crimes under this chapter and of determining the penalties therefor.'" *Id.* (quoting Me. Rev. Stat. Ann. tit. 17-A, § 1102); *compare* Me. Rev. Stat. Ann. tit. 17-A, § 1103(1-A)(H) (trafficking in a schedule Z drug is a Class D misdemeanor punishable by up to 364 days' imprisonment), *with* § 1103(1-A)(A) (trafficking in a schedule W drug is a Class B felony punishable by imprisonment of up to ten years).

Therefore, as in *Swaby*, the Maine statute was not "drafted merely 'to offer 'illustrative examples,'" but instead to assign "different punishments" based on the class of a drug. *Swaby,* 847 F.36 at 68 (quoting *Mathis*, 579 U.S. at 518). This feature of the Maine statute

"also points in favor of the conclusion that the offense sets out distinct crimes based on drug type." *Id.*

Lastly, as this Court noted in *Swaby*, "even where 'state law fails to provide clear answers, federal judges have another place to look: the record of the prior conviction itself.'" *Id.* (quoting *Mathis*, 579 U.S. at 518). "[A]n indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* (citing *Mathis*, 579 U.S. at 519). As in *Swaby*, the indictment in this case did exactly this, specifying that Moran-Stenson "did intentionally or knowingly traffick in what he knew or believed to be a scheduled drug, *which was in fact cocaine base*, a schedule W drug." D 39 at 9 (emphasis added). *See Swaby*, 847 F.3d at 68 (noting that the indictment specified "that Swaby manufactured, delivered, or possessed with intent to distribute "a controlled substance, to wit, [m]arijuana") (alteration in original).

Moreover, the Maine Pattern Jury Instruction covering the offense of possession of cocaine establishes that State particular substance involved is an element of the offense. The pattern instruction provides:

"A person is guilty of possession of cocaine if the State proves beyond a reasonable doubt that he intentionally or knowingly possessed what he knew or believed to be cocaine and which was in fact cocaine." Alexander, *Maine Jury Instruction Manual* § 6-43 (2024 ed.). Therefore, under the framework established by the Supreme Court in *Mathis* and this Court in *Swaby*, Maine law conclusively establishes that the particular drug substance is an element of the offense, therefore making the statute divisible, and authorizing use of the modified categorical approach.

As noted above, the final step in the analysis is not in dispute here—Moran-Stenson's objection in the District Court was not rooted in any factual application of the *Shepard* documents. He has never argued that his predicate conviction is not, in fact, a controlled substance offense. And for good reason: the *Shepard* documents make clear that the specific controlled substance at issue was cocaine base, which is listed under both the federal CSA and Schedule W of the Maine state law. D 39 at 9. Here, as in *Swaby*, Moran-Stenson's conviction "clearly… relat[es] to a controlled substance" as defined in the federal drug schedules, and thus qualifies as a predicate conviction for a four-

level increase in base offense level under U.S.S.G. § 2K2.1. *See Swaby*, 847 F.3d at 69. Therefore, the district court properly overruled Moran-Stenson's objection and correctly determined that his base offense level was 20.

### E. The cases relied on by Moran-Stenson are inapposite or support the government's position.

Moran-Stenson claims that *United States v. Martinez-Lopez*, 864 F.3d 1034 (9th Cir. 2017), supports his argument. To the contrary, *Martinez-Lopez* bolsters the government's position that the substance component of the Maine statute is divisible. In *Martinez-Lopez*, the Ninth Circuit held that California's drug trafficking statute was "divisible and subject to the modified categorical approach." 864 F.3d at 1037. The court in *Martinez-Lopez* held that the statute was "divisible with regard to both its controlled substance requirement and its actus reus requirement" and thus the Court "appl[ied] the modified categorical approach." *Id*. at 1043.

In reaching that conclusion, the Court "consult[ed] 'authoritative sources of state law' to determine whether a statute contains alternative elements defining multiple crimes [rather than] alternative means by which a defendant might commit the same crime." *Id*. at 1039

(quoting *Mathis*, 579 U.S. at 518). The court found that the statute was "divisible with regard to its controlled substance requirement" based on state court decisions establishing that "the controlled substance requirement is an element" of the offense. *Id*. at 1041. In applying the modified categorical approach, the court determined that Martinez-Lopez's prior conviction was for "selling cocaine, which qualifies as a drug trafficking offense under the guidelines." *Id*. at 1037. The court therefore affirmed the defendant's conviction and sentence. *Id*. at 1044.

*Martinez-Lopez* is thus consistent with both *Swaby* and the decisions of other circuits that have addressed the issue. *See Cucalon v. Barr*, 958 F.3d 245, 251-52 (4th Cir. 2020) (noting that that the Supreme Court of Virginia "directly answered the question" of whether the Virginia controlled substance law was divisible by holding that "proof of the identity of the prohibited substance [w]as an element of the offense"); *Rincon v. Garland*, 70 F.4th 1080, 1085-86 (8th Cir. 2023) (determining that Kansas law provided "'persuasive evidence' that drug type is an element [of the offense]" and "the statute is divisible based on the drug involved" and applying modified categorical approach).

Likewise, *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), does not support Moran-Stenson's argument that the Maine statute is indivisible. In *Townshend*, (and *Harbin v. Sessions*, 860 F.3d 58 (2d Cir. 2017), which *Townsend* followed) the Second Circuit found the New York statute to be indivisible because "the particular controlled substance a defendant actually possessed [was] not an element under the New York Law and need not be proven for a defendant to be convicted of violating this statute." 897 F.3d at 74.

As the court explained in *Harbin*, the phrase "controlled substance" under New York law was defined broadly as "any substance listed in schedule I, II, III, IV or V of section thirty-three hundred six of the public health law other than marihuana," and the statute provided "no indication that the sale of each substance is a distinct offense." 860 F.3d at 65. Moreover, the text of the statute did not "suggest that a jury must agree on the particular substance sold." *Id.* Rather, [i]f some jurors believed that a defendant had sold cocaine, and others believed that he had sold heroin, they could still agree that he had sold 'a controlled substance,' and issue a guilty verdict." *Id.*

In this way, the court noted, the New York statute was "similar to the hypothetical statute discussed in *Mathis*, which allowed a jury to convict 'even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a 'deadly weapon.'" *Id.* (quoting *Mathis*, 579 U.S. at 506). The statute thus created "only a single crime" that established "a number of different factual means by which that crime may be committed." *Id.*[7] Therefore, the court found the statute was not divisible and did not apply the modified categorical approach. *Id.* at 66.

This case is distinguishable from *Harbin* and *Townsend* in three critical respects. First, unlike the New York statute, the Maine statutory scheme requires the State to prove the particular controlled substance as an element of the offense. This is evident from the plain language of the statute and supporting case law, the Maine pattern jury instruction, and the indictment itself, which stated that Moran-Stenson

---

[7] Likewise, the New York law's penalty provisions "prescribe[d] the same narrow range of penalties for violations of [the law] no matter which controlled substance a defendant has sold." 860 F.3d at 65. The court thus found that "[t]he fact that [the statute] carrie[d] the same penalties for each violation" was "in line with our reading . . . that each controlled substance is a mere 'means' of violating the statute, not a separate alternative element." *Id.*

"did intentionally or knowingly traffick in what he knew or believed to be a scheduled drug, which was in fact cocaine base, a schedule W drug." D 39 at 9.

Second, unlike the New York statute, which defines "controlled substance" broadly as "any substance listed in schedule I, II, III, IV or V of section thirty-three hundred six of the public health law other than marihuana," *Harbin*, 860 F.3d at 65, the Maine statute is divided by various drug schedules for the purpose of defining separate crimes with distinct penalties. *See State v. McLaughlin*, 189 A.3d at 268. In this way, the Maine statute is like the Rhode Island statute at issue in *Swaby*, and distinguishable from the New York law, because it "effectively creates several different crimes," and not merely separate means of committing the same offense. *See Coronado,* 759 F.3d at 985.

Finally, in contrast to the New York statute, which "prescribes the same narrow range of penalties for violations of [the law] no matter which controlled substance a defendant has sold, *Harbin*, 860 F.3d at 65, the Maine statute establishes different penalties for each separate controlled substance schedule. For instance, distribution of cocaine base under Schedule W, as in this case, is a felony punishable by up to ten

years' imprisonment, whereas distribution of a Schedule Z substance is a misdemeanor subject to a maximum of 364 days' imprisonment. *Compare* 17-A § 1103(1-A)(A) (trafficking in a schedule W drug is a Class B felony punishable by imprisonment of up to ten years ) *with* § 1103(1-A)(H) (trafficking in a schedule Z drug is a Class D misdemeanor punishable by up to 364 days' imprisonment). As this Court observed in *Swaby*, this feature of the Maine statute "also points in favor of the conclusion that the offense sets out distinct crimes based on drug type." 847 F.36 at 68. These factors distinguish this case from *Harbin* and *Townsend* and support the conclusion that the Maine statute establishes alternative elements defining multiple crimes rather than alternative means by which a single crime might be committed. *Mathis*, 579 U.S. at 518.

Based on the foregoing authority, the Maine statute is divisible with regard to both the actus reus requirement and the substance element. The district court therefore properly applied the modified categorical approach to determine that Moran-Stenson's state-court conviction was a "controlled substance offense" within the meaning of U.S.S.G. § 4B1.2(b). This Court should affirm.

# CONCLUSION

For the above-stated reasons, the judgment below should be affirmed.

Respectfully submitted,

DARCIE N. MCELWEE
United States Attorney

/s/ Brian S. Kleinbord

Brian S. Kleinbord
Assistant U.S. Attorney

Dated: May 13, 2024

# United States Court of Appeals

## FOR THE FIRST CIRCUIT

### CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATIONS

CA No. 23-1842

UNITED STATES OF AMERICA

v.

SHAIQUAN MORAN-STENSON, a/k/a Shaiquan Moran-Stetson, a/k/a Fabio, a/k/a Q

TO BE INCLUDED IMMEDIATELY BEFORE THE
CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT

1.    This brief has been prepared using (SELECT AND COMPLETE ONLY ONE):

    14 point, proportionally spaced, serif typeface (such as CG Times or Times New Roman). Specify software name and version, typeface name, and point size below (for example, Wordperfect 8, CG Times, 14 point):
    Century Schoolbook , 14 pt

    10 1/2 characters per inch, monospaced typeface (such as Courier or Courier New). Specify software name and version, typeface name, and characters per inch below (for example, Wordperfect 8, Courier, 10 1/2 CPI):

2.    EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; addendum; and the certificate of service, the brief contains (SELECT AND COMPLETE ONLY ONE):

    ❏    _____ Pages (give specific number of pages; may not exceed 30 pages for opening or answering brief or 15 pages for reply brief); OR

    ☒    7,165 Words (give specific number of words; may not exceed 14,000 words for opening or answering brief or 7,000 for reply brief); OR

    ❏    _____Lines of Mono spaced Type (give specific number of lines; may not exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used ONLY for briefs prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation can result in the Court striking the brief or imposing sanctions. If the Court so directs, I will provide a copy of the word or line print-out.

    /s/ Brian S. Kleinbord
    Signature of Filing Party

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2024, I electronically filed

Government's Brief with the Clerk of Court using the CM/ECF system,

which will send notification of such filing to the following:

David M. Rothstein
Rothstein Law LLC
100 High Street
Exeter, NH 03833
rothsteindm@outlook.com

/s/ Brandon Pofahl
Paralegal Specialist